UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
APR - 5 2017
RECEIVED

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED APR - 5 2017
CLERK

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS,

Petitioner,

v.

SURFACE TRANSPORTATION BOARD and the UNITED STATES OF AMERICA,

Respondents.

No. 17-1112

ORIGINAL

## PETITION FOR REVIEW

Pursuant to 28 U.S.C. §§ 2321 and 2342(5), and Rule 15(a) of the Federal Rules of Appellate Procedure, the American Fuel & Petrochemical Manufacturers ("AFPM") hereby petitions this Court to review a final order issued by the Surface Transportation Board ("STB"). The order purports to apply rate reasonable standards under the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10701, to an unreasonable practice claim brought under 49 U.S.C. § 10702. The order was served on February 8, 2017, and a copy of the order is attached as Exhibit A.

This Court is the proper venue for this action under 28 U.S.C. § 2343.

The final order should be set aside because it is unlawful, arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law. AFPM respectfully requests that this Court vacate, enjoin, and set aside the order,

and that the Court provide any other additional relief to which AFPM may be entitled.

Respectfully submitted,

JUSTIN A. SAVAGE
CATHERINE E. STETSON
SEAN M. MAROTTA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
justin.savage@hoganlovells.com

*Counsel for American Fuel & Petrochemical Manufacturers*

April 5, 2017

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
APR - 5 2017
RECEIVED



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED APR - 5 2017
CLERK

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS,<br><br>Petitioner,<br><br>v.<br><br>SURFACE TRANSPORTATION BOARD and the UNITED STATES OF AMERICA,<br><br>Respondents. | No. 17-1112 |

**PETITIONER'S CORPORATE DISCLOSURE STATEMENT**

American Fuel & Petrochemical Manufacturers ("AFPM") is a national trade association representing approximately 400 companies that encompass virtually all United States refining and petrochemical manufacturing capacity. AFPM certifies that it is a "trade association" for purposes of Circuit Rule 26.1(b).

Respectfully submitted,

JUSTIN A. SAVAGE
CATHERINE E. STETSON
SEAN M. MAROTTA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
justin.savage@hoganlovells.com

*Counsel for American Fuel & Petrochemical Manufacturers*

ORIGINAL

April 5, 2017

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2017, I caused copies of the foregoing to be delivered via first-class mail to the following:

General Counsel
Office of the General Counsel
Surface Transportation Board
395 E Street, S.W.
Washington, DC 20423

Jeff Sessions
Attorney General
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

And by electronic mail to:

Anthony J. LaRocca
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
(*Counsel for BNSF Railway Co.*)

Justin A. Savage

Hogan Lovells

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
APR - 5 2017
RECEIVED

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED APR - 5 2017
CLERK

April 5, 2017

**BY HAND DELIVERY**

Mark J. Langer, Clerk
United States Court of Appeals for the District of Columbia Circuit
United States Courthouse, Room 5523
333 Constitution Avenue, N.W.
Washington, DC 20001

17-1112

**Re: *American Fuel & Petrochemical Manufacturers v. STB*, No.**

Dear Mr. Langer:

Enclosed for filing in this matter are an original and five copies of a petition for review, corporate disclosure statement, and certificate of service. We have also enclosed a $500 check for the docketing fee.

Please file-stamp one copy and return it to our messenger.

Thank you for your kind assistance.

Sincerely,

Justin A. Savage

Partner
justin.savage@hoganlovells.com
D +1 202 637 5558

Counsel for Petitioner

ORIGINAL

Enclosures

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Brussels Caracas Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rio de Janeiro Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Ulaanbaatar Warsaw Washington DC Associated offices: Budapest Jakarta Shanghai FTZ Zagreb. Business Service Centers: Johannesburg Louisville. Legal Service Center: Birmingham. For more information see www.hoganlovells.com

# EXHIBIT A

45543
EB

SERVICE DATE – FEBRUARY 8, 2017

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. NOR 42146

AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS
v.
BNSF RAILWAY COMPANY

Digest:[1] This decision grants a motion filed by BNSF Railway Company to dismiss American Fuel & Petrochemical Manufacturers' complaint that certain railroad charges and practices are unreasonable and in violation of the railroad's common carrier obligation.

Decided: February 6, 2017

This decision grants a motion of BNSF Railway Company (BNSF) to dismiss a complaint filed by American Fuel & Petrochemical Manufacturers (AFPM), in which AFPM asserts that a BNSF price authority violates BNSF's common carrier obligation under 49 U.S.C. § 11101 and is an unreasonable practice in violation of 49 U.S.C. § 10702(2).

BACKGROUND

In a complaint filed on April 25, 2016, and amended on May 26, 2016, AFPM[2] states that, effective January 1, 2015, BNSF instituted a cost schedule, Price Authority 90118, which lists per-carload rates for the shipment of a commodity group that includes crude oil, with origin points in Bismarck, N.D., and Westminster, B.C., and with destination points around the United States. (First Am. Compl., Ex. A at 5-7.) The price authority lists the per-carload rates by equipment type, with shipments in certain types of cars, known as unjacketed or general purpose DOT-111 tank cars, costing $1,000 more for all origin-destination pairs than shipments in jacketed DOT-111 tank cars, CPC-1232 tank cars, and Next Generation tank cars. (Id.)

---

[1] The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader. It may not be cited to or relied upon as precedent. Policy Statement on Plain Language Digests in Decisions, EP 696 (STB served Sept. 2, 2010).

[2] AFPM states that it is a national trade association comprised of over 400 petroleum refiners and petrochemical manufacturers, many of whom ship crude oil in tank cars over BNSF lines.

AFPM argues that, by implementing this price authority with a "flat-rate $1,000 differential" depending on the equipment used, BNSF has enacted "an across-the-board penalty on the use of general purpose DOT 111 railcars in crude service." (First Am. Compl. 5.) AFPM argues that the $1,000 price differential is an unreasonable practice in violation of § 10702(2), because it is a penalty on "PHMSA-authorized packaging in a general [purpose] DOT 111 railcar, regardless of any other factor, such as location or distance moved." (Id. at 10.)

AFPM further argues that BNSF implemented this price differential intending to deter the use of unjacketed DOT-111 tank cars, even though these cars are currently authorized for the shipping of crude oil under safety regulations issued by the Pipeline and Hazardous Materials Safety Administration (PHMSA).[3] (First Am. Compl. 3-4.) AFPM contends that BNSF's price authority thus contravenes PHMSA's safety regulations, and as such, BNSF is violating its common carrier obligation under § 11101. In support of this claim, AFPM states that "BNSF is bound by the comprehensive regulatory regime governing the shipment of crude oil constructed by PHMSA and Congress, and must accept for transportation those general purpose DOT 111 cars that are authorized for such transportation." (First Am. Compl. 9.)

For these reasons, AFPM requests that the Board find BNSF Price Authority 90118 void and order BNSF to rescind immediately the price authority. (Id. at 11.)

On June 15, 2016, BNSF filed its answer to the first amended complaint. BNSF admits that the price contained in Price Authority 90118 is $1,000 more for each origin/destination pair and route for unjacketed DOT-111 tank cars than it is for other tank cars, but denies that this price differential is a breach of its common carrier obligation or an unreasonable practice. (Answer 3, 5.) BNSF asserts a number of defenses to AFPM's complaint. On June 21, 2016, BNSF filed a motion to dismiss the complaint, asserting many of the same points it made in its answer. BNSF argues that AFPM has failed to state a claim for either a common carrier obligation violation or an unreasonable practice, because AFPM's claims are based solely on the level of BNSF's rates and must be challenged in a rate reasonableness case under 49 U.S.C. § 10701. BNSF points out that the allegations in AFPM's complaint before the Board are "virtually identical" to allegations AFPM made in a complaint filed in the U.S. District Court for the Southern District of Texas in 2015, which that court dismissed on the ground that the dispute is one over BNSF's rates and thus falls within the exclusive jurisdiction of the Board over rate

---

[3] On May 8, 2015, PHMSA issued a final rule establishing new design specifications for tank cars and a timeline for retrofitting and phasing out, by packing group, the use of unjacketed DOT-111 tank cars for the shipment of crude oil. See Hazardous Materials: Enhanced Tank Car Standards & Operational Controls for High-Hazard Flammable Trains, 80 Fed. Reg. 26,644, 26,648 (May 8, 2015); see also 49 C.F.R. §§ 173.241-173.243. The timeline contained in the final rule was modified by section 7304 of the Fixing America's Surface Transportation Act, Pub. L. No. 114-94, 129 Stat. 1312, 1596-97 (2015), to phase out the use of unjacketed DOT-111 tank cars by January 1, 2018, regardless of packing group.

reasonableness.[4] (Mot. to Dismiss 1-2. See also Mot. to Dismiss Ex. B at 6-7.) BNSF therefore asserts that collateral estoppel bars AFPM from bringing its complaint before the Board as anything other than a rate reasonableness case.[5] (Id. at 1-2, 9-12.) Even without the district court's decision, BNSF argues that the complaint is a rate challenge because it is "a challenge to a railroad's conduct that is manifested exclusively in the level of the rate" and should be dismissed because AFPM fails to allege market dominance or otherwise meet the requirements of the rate reasonableness procedures. (Id. at 2, 13.) Finally, BNSF argues that the complaint should also be dismissed because, even if it is viewed "as something other than a challenge to the reasonableness of BNSF's rates," AFPM has failed to state a claim for a common carrier obligation violation or an unreasonable practice. (Id. at 14-17.)

On June 23, 2016, the parties jointly filed a status report requesting that the Board defer any action on a procedural schedule in this proceeding until the Board has ruled on BNSF's motion to dismiss. On June 30, 2016, the Board granted that request.

In its July 11, 2016, response to BNSF's motion to dismiss, AFPM argues that the motion should be denied, because the complaint presents plausible claims of the violation of the common carrier obligation and an unreasonable practice. (Reply to Mot. to Dismiss 1.) AFPM asserts that its complaint does not need to be brought as a rate reasonableness complaint because it is not challenging the level of BNSF's total rate but rather the manner in which BNSF has applied an additional $1,000 charge on unjacketed DOT-111 tank cars, which AFPM describes as a surcharge. (Id. at 7.) AFPM further argues that the U.S. District Court for the Southern District of Texas's decision on AFPM's 2015 complaint does not collaterally estop AFPM from bringing its complaint before the Board as a common carrier obligation violation and an unreasonable practice complaint. (Id. at 15-16.)

In a letter dated July 8, 2016, the Honorable Peter A. DeFazio, ranking member of the U.S. House of Representatives Committee on Transportation and Infrastructure, urged the Board to dismiss AFPM's complaint.

## DISCUSSION AND CONCLUSIONS

The Board may dismiss a complaint if it "does not state reasonable grounds for investigation and action." 49 U.S.C. § 11701(b). Motions to dismiss are generally disfavored. See Dairyland Power Coop. v. Union Pac. R.R., NOR 42105, slip op. at 5 (STB served July 29, 2008); Garden Spot & N. Ltd. P'ship—Purchase & Operate—Ind. R.R. Line Between Newton & Browns, Ill., FD 31593, slip op. at 1 (ICC served Jan. 5, 1993). While reviewing a

---

[4] AFPM's complaint before that court included the common carrier obligation claim it brings before the Board here, but did not include the unreasonable practice claim it also brings in this complaint. (See Mot. to Dismiss Ex. A at 1, 7-10.)

[5] "Issue preclusion [or collateral estoppel] 'bars relitigation of an issue by a party that has *actually litigated [the] issue*.'" Cal. High-Speed Rail Auth—Pet. for Declaratory Order, FD 35861, slip op. at 7 n.15 (STB served Dec. 12, 2014) (quoting SBC Commc'ns v. FCC, 407 F.3d 1223, 1229 (D.C. Cir. 2005)).

motion to dismiss, the Board will view the alleged facts in the light most favorable to the complainant. Consumers Energy Co. v. CSX Transp., Inc., NOR 42142, slip op. at 1 (STB served June 15, 2015); Montana v. BNSF Ry., NOR 42124, slip op. at 3 (STB served Feb. 16, 2011).

The Board finds that AFPM has not stated reasonable grounds for investigation or action.[6] In Union Pacific Railroad v. ICC, 867 F.2d 646 (D.C. Cir. 1989) (Union Pacific), the U.S. Court of Appeals for the D.C. Circuit overturned an Interstate Commerce Commission (ICC) decision striking down certain railroad rates as an unreasonable practice. In doing so, the court found that, where a challenged practice is "manifested exclusively in the level of the rates that customers are charged," then the challenge is really to the level of the rate and may only be challenged under the ICC's (now the Board's) rate reasonableness procedures. Union Pacific, 867 F.2d at 649. Despite AFPM's arguments to the contrary, the Board finds that AFPM's complaint is a challenge to BNSF conduct that manifests exclusively in the level of the rate contained in Price Authority 90118. Union Pacific is therefore controlling and, as BNSF argues (Mot. to Dismiss 1-2), AFPM's complaint would have to be brought under the Board's rate reasonableness procedures at 49 U.S.C. § 10701. AFPM's current complaint must therefore be dismissed.

AFPM argues that the Board may investigate the allegations in its complaint despite Union Pacific. According to AFPM, under Board precedent, the Board does not apply rate reasonableness requirements to situations involving surcharges in which "(1) the surcharge is a separately identifiable component of the carrier's total rate and (2) relief for those claims does not entail setting the precise level of the carrier's total rate." (Reply to Mot. to Dismiss 7 (citing Rail Fuel Surcharges, EP 661, slip op. at 2 (STB served Mar. 14, 2006)).) AFPM reads the Board's Rail Fuel Surcharges precedent too broadly.

First, although AFPM acknowledges that misrepresentation was present in Rail Fuel Surcharges (see Reply to Mot. to Dismiss 10), it fails to appreciate that misrepresentation was an essential element of the Board's decision. Rail Fuel Surcharges involved the then-common railroad industry practice of recovering increased fuel costs by charging a rate-based "fuel surcharge"—i.e., a "separately identified component" of the total transportation rate calculated as a percentage of the base rate. The Board found that a surcharge calculated in this manner has no real correlation with the increase in fuel costs for the movement subject to the surcharge, and that imposing such a surcharge is an unreasonable practice because it is "misleading." Rail Fuel Surcharges, EP 661, slip op. at 7 (STB served Jan. 26, 2007) ("[W]e are not limiting the total amount that a rail carrier can charge for providing rail transportation through some combination of base rates and surcharges. Rather, we are only addressing the manner in which railroads apply what they label a fuel surcharge. . . . If the railroads wish to raise their rates they may do so, subject to the rate reasonableness requirement of the statute, but they may not impose those increases on their customers on the basis of a misrepresentation."); Dairyland Power Coop., NOR 42105, slip op. at 2 ("[I]f there is no 'real correlation' between the surcharge and the

---

[6] Because the Board is dismissing this complaint on these grounds, it need not resolve BNSF's collateral estoppel argument.

increase in fuel costs for the particular movement to which a surcharge is applied, then it is misleading and ultimately an unreasonable practice."). Thus, in assessing what it described as a "separately identified" (not "identifiable") component of the total rate,[7] the Board made clear it was focusing on the representations made by a railroad to its customers. More recently, the Board has confirmed that where there is no allegation of misrepresentation, Rail Fuel Surcharges does not permit the Board to assess rate claims outside of rate reasonableness procedures. See CF Indus. v. Ind. & Ohio Ry.—Pet. For Declaratory Order, FD 35517 et al., slip op. at 5 (STB served June 21, 2013) (distinguishing Rail Fuel Surcharges and applying Union Pacific to bar a surcharge-based claim in absence of "showing that respondents misled shippers regarding a rate or charge"). To the extent that AFPM asks the Board to extend the logic of Rail Fuel Surcharges to cases that do not involve misrepresentation (Reply to Mot. to Dismiss 11 n.43), the Board already declined to do so in CF Industries and AFPM has not persuaded us to do otherwise.

Second, AFPM cannot establish that the $1,000 differential between BNSF's rates for unjacketed DOT-111s and other tank cars is a "separately identified" charge under Rail Fuel Surcharges. BNSF Price Authority 90118 contains undivided base rates that vary by equipment type. AFPM's argument that it is enough that a charge is "separately identifiable" does not find support in Rail Fuel Surcharges, which clearly delineated base rates from surcharges. See e.g., Rail Fuel Surcharges, EP 661, slip op. at 4 (STB served August 3, 2006). The fact that the rates are uniformly $1,000 higher for transportation in unjacketed DOT-111s does not convert that rate differential into a surcharge. See CF Indus., FD 35517 et al., slip op. at 5 (concluding that higher, undivided base rate for transporting TIH-PIH cars was not a surcharge).

Third, contrary to AFPM's suggestion (Reply to Mot. to Dismiss 7), Board precedent does not hold that rate reasonableness procedures apply only if the Board is asked to set the "precise level" of the total rate. In Rail Fuel Surcharges, slip op. at 7 (STB served Jan. 26, 2007), the Board simply noted that its decision would not limit the total rate that a carrier could charge while also explaining that it was only addressing the application of a mislabeled surcharge. Here, ordering a carrier to rescind a rate—not because the carrier made a misrepresentation but rather because the rate is too high in relation to other rates, as AFPM asks the Board to do here—is fundamentally a challenge to the level of the rate and would result in the rate either returning to its former level or being set at some other level beyond the railroad's discretion.

In short, the absence of a misrepresentation allegation, combined with AFPM's request to alter the level of BNSF's base rate, makes Rail Fuel Surcharges inapposite. Accordingly, we find that Union Pacific is applicable and AFPM's complaint will be dismissed.

Even if Union Pacific were not controlling, however, AFPM has not stated reasonable grounds for investigation of its claims that BNSF has violated its common carrier obligation under § 11101 or engaged in an unreasonable practice in violation of § 10702(2).

---

[7] See infra for discussion finding that the rate differential is not a "separately identified" component of the rate.

AFPM has not provided reasonable grounds for investigating BNSF's conduct as a violation of BNSF's common carrier obligation. Under § 11101, a railroad must provide its rates upon request, and must provide service under those rates upon reasonable request. See 49 U.S.C. § 11101(a) & (b); see also Montana v. BNSF Ry., NOR 42124, slip op. at 7 (STB served Apr. 26, 2013). AFPM argues that the additional $1,000 charge on unjacketed DOT-111s is an "effective refusal of service in violation of 49 U.S.C. § 11101." Specifically, AFPM argues that BNSF's $1,000 charge for use of DOT-111 cars conflicts with PHMSA's regulatory regime for tank car modifications. (Reply to Mot. to Dismiss 23.) AFPM relies on Consol. Rail Corp. v. ICC (Conrail), 646 F.2d 642 (D.C. Cir. 1981) (Reply to Mot. to Dismiss 25), a case in which a court held that, where federal agencies have established under their statutory authority "'complete and comprehensive' safety standards . . . while balancing the cost of safety and the need for economy, a presumption arises that expenditures for additional safety measures not specified by these agencies" are unnecessary and not reasonable within the meaning of 49 U.S.C. § 10702. Conrail, 646 F.2d at 650.[8] Here, AFPM does not allege that BNSF has imposed additional safety measures, but merely alleges that BNSF imposed what AFPM terms a "surcharge," making Conrail inapposite with regard to interference with safety regulations.

AFPM claims that Conrail should nonetheless apply in this case because the clear intent of the "surcharge" is to evade the common carrier obligation. (Reply to Mot. to Dismiss at 23-24.) AFPM's allegations concerning a common carrier violation do not support a claim. AFPM has challenged a published BNSF price authority, and thus does not argue that BNSF has refused to provide a rate. And although AFPM alleges that BNSF's rate for unjacketed DOT-111 cars is an effective denial of service, AFPM does not allege in its complaint that BNSF has actually refused to provide service under its published rate or that shippers would be precluded from using unjacketed DOT-111s. (See First Am. Compl. 23 (alleging only that the "onerous financial penalty" would make the use of unjacketed DOT-111s "impractical").) Thus, although AFPM claims a potential loss of access to the rail network, (Reply to Mot. to Dismiss 5, 23-24), the facts alleged do not bear this out because BNSF continues to accept unjacketed DOT-111s. As for AFPM's argument that Conrail should be extended to apply to surcharges where the intent is to evade the common carrier obligation, as discussed above, the rate differential here is not in fact a surcharge. Accordingly, if the Board were to extend Conrail in this case in the manner AFPM suggests, it would necessarily be on the basis that the purpose of the *higher rate* for unjacketed DOT-111 cars is to evade the common carrier obligation. However, as discussed above, such an argument would be contrary to Union Pacific, in that it would involve a challenged practice "manifested exclusively in the level of the rates that customers are charged."[9]

---

[8] In Conrail, the ICC had ruled that requiring spent nuclear fuel to travel in "special train service" consisting of safety measures above and beyond those required by the U.S. Department of Transportation and the Nuclear Regulatory Commission was unnecessary and thus an unreasonable practice. The court upheld the ICC's decision.

[9] AFPM cites Grain Land Cooperative v. Canadian Pacific & Soo Line Railroad, NOR 41687 (STB served Dec. 8, 1999) and other unlawful embargo cases for the proposition that surcharges can be considered in common carrier cases. (Reply to Mot. to Dismiss 23.) But here, as discussed above, AFPM is challenging BNSF's use of an undivided base rate, not a surcharge. Moreover, unlike Grain Land, AFPM does not allege that BNSF practices other than

(continued . . . )

Nor has AFPM provided reasonable grounds for investigating BNSF's conduct as an unreasonable practice. Under § 10702(2), a railroad must establish reasonable rules and practices for the transportation and service it provides, and in determining whether a particular practice is unreasonable, the Board analyzes the relevant factors in each specific case. See, e.g., N. Am. Freight Car Ass'n v. Union Pac. R.R., NOR 42119, slip op. at 5 (STB served Mar. 12, 2015). Here, AFPM argues that BNSF's practice of charging an additional $1,000 for the use of unjacketed DOT-111s "should be considered presumptively unreasonable" because it "interferes with the complete and comprehensive safety regulations promulgated by other federal agencies." (Reply to Mot. to Dismiss 25.) However, as discussed above, the mere establishment of an undivided base rate for transportation does not interfere with safety regulations.

For the foregoing reasons, the Board grants BNSF's motion to dismiss this complaint in its entirety.

It is ordered:

1. BNSF's motion to dismiss is granted.

2. This decision is effective on its service date.

By the Board, Acting Chairman Begeman, Vice Chairman Elliott, and Commissioner Miller.

---

( . . . continued)
the rate interfere with the common carrier obligation. See Grain Land Coop., NOR 41687, slip op. at 5 (failure to deliver cars was also alleged to be part of an unlawful embargo scheme).